**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| JASON TIBBS,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN,<br><br>Defendant. | CASE NO. 3:25-CV-770-HAB-ALT |

**OPINION AND ORDER**

Jason Tibbs, a prisoner without a lawyer, is suing the Warden of the Westville Correctional Facility in his official capacity on a single injunctive relief claim to take the actions necessary to correct the violations of Tibbs's right to procedural due process in connection with his time in disciplinary idle housing. (ECF 10). In his amended complaint, Tibbs alleged that Officer Kennedy coerced him into pleading guilty to a disciplinary offense, which caused him to be placed in disciplinary idle housing. (ECF 9).

In the answer, the Warden asserted two affirmative defenses: (1) failure to exhaust administrative remedies and (2) that the action was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), decisions which prevent plaintiffs from raising claims that would necessarily imply the invalidity of a prison disciplinary proceeding that has not already been formally invalidated. (ECF 17). Consequently, the Court set a deadline for the Warden to file a motion for summary judgment based on these defenses. (ECF 18). That motion has since been filed and fully briefed. (ECF 23, ECF 27, ECF 29).[1] But the summary judgment

---

[1] On May 18, 2026, Tibbs filed a sur-reply opposing the motion for summary judgment without leave of court, and, on May 20, the Warden filed a motion to strike it. ECF 30, ECF 31. While this filing is inappropriate, it is unclear how allowing it to remain on the docket would prejudice the Warden. *See Tektel, Inc. v. Maier*, 813 F. Supp. 1331,

record reveals that Tibbs has returned to general population and was assigned a job. Because this renders his injunctive relief claim moot, the Court will dismiss this case.

**FACTS**

At all relevant times, Tibbs resided at the Westville Correctional Facility. (ECF 9, at 1). In February 2025, Tibbs was placed in general population. (ECF 23-3, at 4). On March 4, a correctional officer issued two conduct reports, charging Tibbs with trafficking and possessing an electronic device. *Id.* On March 4 and 5, correctional staff assigned Tibbs to a different housing location due to the pending conduct reports. *Id.* According to departmental policy, "An offender charged with a Major Offense may be temporarily confined or separated from the general population for a reasonable period of time pending disciplinary action if the offender's continued presence in the population poses a threat to self, others, property, or the security of the facility or program." ECF 23-5 at 17.

On March 19, 2025, a screening officer notified Tibbs of the disciplinary charges. ECF 23-3 at 4-5. On April 9, a hearing officer found Tibbs not guilty of possessing an electronic device. *Id.* at 4. On April 30, Officer Kennedy presided over the disciplinary hearing on the charge of trafficking. *Id.* at 5. During this hearing, Tibbs pled guilty for a lesser offense, and Officer Kennedy sanctioned him only with the loss of sixty days earned credit time. *Id.* When space became available on October 8, correctional staff returned Tibbs to general population to enable him to attend his job. *Id.*; ECF 23-1 at 3.

**DISCUSSION**

---

1334 (N.D. Ill. 1992) ("Motions to strike under Federal Rule 12(f) are not favored, and are usually denied unless the language in the pleading has no possible relation to the controversy and is clearly prejudicial."). Consequently, the court denies the motion to strike.

The Warden argues that he is entitled to summary judgment because Tibbs failed to exhaust administrative remedies and because the *Heck/Edwards* doctrine bars Tibbs' claim that the disciplinary proceeding has not been formally invalidated. However, the undisputed evidentiary record reveals an even more fundamental problem with Tibbs' injunctive relief claim.

Significantly, Tibbs proceeds solely on an injunctive relief claim for the Warden to take the actions necessary to correct the violations of Tibbs' right to procedural due process in connection with his time in disciplinary idle housing. The court sets aside the dispute about whether Tibbs was placed in disciplinary idle housing or merely circumstances resembling disciplinary idle housing. Regardless of the proper nomenclature for this housing location, the record demonstrates that Tibbs was removed from general population in March 2025 but that he returned to general population on October 8, 2025, and has also been assigned a job. In other words, Tibbs is no longer placed in disciplinary idle housing or a substantial equivalent.

"[T]he federal courts are obliged to police the constitutional and statutory limitations on their jurisdiction." *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986). "Article III, § 2 of the Constitution limits the jurisdiction of federal courts to 'Cases or Controversies.'" *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 929 (7th Cir. 2013). "As such, federal courts are prohibited from rendering advisory opinions; they cannot divine on abstract disputes about the law." *Id.* "[M[ootness is the doctrine of standing set in a time frame; that is, the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* at 929. "Thus, mootness doctrine requires re-evaluating the standing requirements throughout litigation." *Id.* "If at any point the plaintiff would not have standing to bring suit at that time, the case has become moot." *Id.* "Unaccompanied by any continuing, present injury or real and immediate threat of

repeated injury, [an individual's] past exposure to illegal conduct . . . does not show a pending case or controversy regarding injunctive relief." *Young v. Lane*, 922 F.2d 370, 373 (7th Cir. 1991).

As detailed above, Tibbs no longer has a continuing, present injury because he has been returned to general population. Further, the record does not indicate that these circumstances are likely to recur given that they appear to be a one-time occurrence for Tibbs and given that eight months have passed without further incident. Consequently, Tibbs is left with only allegations describing past exposure to illegal conduct, so the court finds that the injunctive relief claim is now moot.

While "[p]rompt, *sua sponte* recognition of flaws in subject matter jurisdiction is commendable," the court is also cognizant that "*sua sponte* dismissals without prior notice or opportunity to be heard are hazardous." *Joyce v. Joyce*, 975 F.2d 379, 386 (7th Cir. 1992). However, inviting further responses from the parties is unnecessary here because, even if subject matter jurisdiction was established, the record demonstrates that the failure to exhaust administrative remedies would bar any claims relating to Tibbs' housing assignment or conditions from March 4, 2025, to October 8, 2025.

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In other words, "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 1025. "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The Indiana Department of Correction (IDOC) maintains at least three separate processes for administrative appeals. First, the IDOC maintains a grievance process to allow inmates to seek relief on a variety of issues, including the interpretation of departmental policies and the actions of correctional staff, but the grievance policy expressly excludes classification actions or decisions, including the loss of a job or bed moves, and disciplinary actions or decisions. ECF 23-2 at 3-4. Inmates initiate the grievance process by submitting a formal grievance on the appropriate departmental form to the Offender Grievance Specialist within ten business days of the incident giving rise to the grievance. *Id.* at 9-10.

The IDOC maintains a separate administrative appeal process for classification matters, including the loss of a job or bed moves. *Id.* at 4; ECF 23-3. Inmates initiate the classification appeal process by submitting an appeal on the appropriate departmental form to the Warden or the Classification Supervisor within ten working days of receiving the classification decision. ECF 23-3 at 10-11. The IDOC also maintains a separate administrative appeal process for a hearing officer's findings at a disciplinary hearing. ECF 23-5 at 53-55. Inmates initiate this appeal process by submitting an appeal to the Warden or a designee on the appropriate departmental form within fifteen calendar days of the disciplinary hearing. *Id.*

As evidence of exhaustion, Tibbs offers: (1) a Request for Interview form addressed to the classification office, dated March 8, 2025, in which he complained of his move to disciplinary idle housing; (2) a Request for Interview form addressed to Mr. Corely at the Office of the EC Complex Director, dated March 10, 2025, in which he complained of his move to disciplinary idle housing; (3) a Disciplinary Appeal form, dated May 7, 2025, in which he complains that the hearing officer refused to consider witness statements; and (4) a Disciplinary Appeal form, dated June 2, 2025, in

which complained about the same disciplinary hearing and noted his lack of a response to the first Disciplinary Appeal form. ECF 27-1.

These efforts did not suffice for purposes of exhaustion. To start, the disciplinary appeal process was not an appropriate vehicle for raising concerns about housing assignments or conditions, particularly where, as here, they were not imposed as a result of a disciplinary hearing. The request for interview forms may have been an effort to initiate either the classification appeals process or the grievance process, but these efforts fall short of the strict compliance required for exhaustion because Tibbs did not use the proper forms and, with respect to the grievance process, he did not submit any form to the Grievance Specialist. Tibbs provides no explanation for not properly initiating the classification appeals process or the grievance process. Though Tibbs expresses generalized concerns about the prison mail system and the grievance process, he does not specifically explain how these concerns prevented him from initiating the administrative appeals process in connection with his allegations.

In sum, the Court lacks subject matter jurisdiction over the claim for injunctive relief. And even if it had subject matter jurisdiction, the Court would grant summary judgment because Tibbs did not exhaust administrative remedies in connection with his housing assignment and conditions. Because no claims remain, the Court will also dismiss this case.

## CONCLUSION

For these reasons, the Court:

(1) DENIES the motion to strike (ECF 31);

(2) DISMISSES this case because the sole claim is moot; and

(3) DIRECTS the clerk to close this case.

**SO ORDERED** on October 6, 2026.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT